14895

LAYTON v. HAMMOND-BROWN-JENNINGS CO. *ET AL.*

(3 S. E. (2d), 492)

426

Messrs. *Osborne, Butler & Moore,* for appellants,

Messrs. *Hannon & Lancaster* and *Johnston & Williams,* for respondent,

June 12, 1939.

The opinion of the Court was delivered by Mr. Justice Baker.

In this action, respondent, an employee of the appellant, Hammond-Brown-Jennings Company, seeks to recover compensation for hernia alleged to have been sustained while about the usual duties of his employment with said appellant.

The appellants having denied liability, a hearing was had and testimony taken before one member of the Industrial Commission, who rendered an opinion awarding compensation to respondent. On appeal to the full Commission, the award of the single Commissioner was confirmed; and on appeal to the Court of Common Pleas, the action of the Commission was sustained, and the appeal dismissed. From such order, an appeal has been taken to this Court.

. The appellants' "Statement of Issues" follows:

"1. Does the evidence show that claimant-respondent's hernia was the result of an 'injury by accident', as provided in Section 2-F of the South Carolina Compensation Act, and does it show that such hernia 'immediately followed an accident', as required by Section 2-R of said Act?

"2. Does the evidence show the claimant's hernia appeared suddenly as required by Section 2-R of said Act?"

Subsections (f) and (r) of Section 2 of the South Carolina Workmen's Compensation Act read, respectively:

"(f) 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

"(r) In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proven to the satisfaction of the Industrial Commission:

"First. That there was an injury resulting in hernia or rupture.

"Second. That the hernia or rupture appeared suddenly.

"Third. That it was accompanied by pain.

"Fourth. That the hernia or rupture immediately followed an accident.

"Fifth. That the hernia or rupture did not exist prior to the accident for which compensation is claimed." Act July 17, 1935, 39 St. at Large, pp. 1233, 1234.

In *Rudd v. Fairforest Finishing Co. et al.*, 189 S. C., 188, 200 S. E., 727, 728, there is such an excellent statement of the law and governing principles of the Workmen's Compensation Act applicable to the instant case, that we quote copiously therefrom:

"It is a familiar formula that findings of fact by a Board or Commission on a claim under a Workmen's Compensation Act are conclusive; and the appellate court will not review such findings except to determine whether there is any evidence to support the award. It may reverse an award if there is an absence of any evidence to support it, but it is not a trier of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the Board, its findings are conclusive in the absence of fraud, and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. This is but an application to Workmen's Compensation cases of the fundamental principle universal in Courts of law, that whether there is any competent evidence is for the Court to determine, but whether the evidence is sufficient is a question for the jury; the function of the Commission being in that respect that of a jury in actions of law. While the findings of fact by the Industrial Commission will be upheld if there is any evidence on which it can rest, it must be founded on evidence, and cannot rest on surmise, conjecture or speculation. *Phillips v. Dixie Stores, Inc., et al.*, 186 S. C., 374, 195 S. E., 646; *Murdaugh v. Robert Lee Const. Co.*, 185 S. C., 497, 194 S. E., 447; *Spearman v. F. S. Royster Guano Co.*, 188 S. C., 393, 199 S. E., 530.

"These governing principles find general concurrence in other jurisdictions. See Note in Ann. Cas., 1918-B, 647. Compensation laws should be given a liberal

construction in furtherance of the beneficent purpose for which they were enacted, and if possible, so as to avoid incongruous or harsh results. *Baltimore & Philadelphia Steamboat Company v. Norton,* 284 U. S., 408, 414, 52 S. Ct., 187, 189, 76 L. Ed., 366.

"In our opinion, the legislative purpose evident in our ■ Act is to restrict compensation for hernia to those cases where there is a relative and reasonably close coincidence between the accidental injury and the hernia, and where it is clear that no other agency intervened, as to time, place, or action, to cause the injury.

"The words 'suddenly' and 'immediately' are elastic ■ terms, admitting of much variety of definition, as held by the Commission. And, as used in the Act, these words should not be construed as the equivalent of the word "instantaneous.' Like similar absolute expressions, they are used here with less strictness than the literal meaning requires. For to give them their literal signification in all cases, regardless of the attendant situations and circumstances, would often defeat meritorious claims upon purely technical grounds, and thus frustrate the purpose of the Act."

Having in mind the foregoing principles of the Act, we will discuss the "Issues" in inverse order.

Respondent was engaged in moving some laundry ■ heaters. These heaters weighed approximately sixty pounds, and were stacked four high. When respondent picked up one of these heaters, and as he "came around with it," "something caught me." "It felt like something pulled loose in my stomach, the right side." Respondent further testified that his injury was accompanied by pain. He undertook to move a couple more stoves, but the pain became so severe, he quit and reported the incident and his condition or injury to Mr. Lambert Hammond, the shipping clerk of the appellant-employer. Mr. Hammond sent respondent to a Dr. Temples, who examined him, but did not

determine what was wrong. He continued to go to Dr. Temples, and on Wednesday night (the injury occurred on Monday before) respondent went to Dr. W. S. Zimmerman, and as a result of the examination by Dr. Zimmerman, was operated upon the following Saturday—an exploratory operation—in which his appendix was removed, and as the appendix "was more or less innocent looking," and apparently was not a sufficient cause for his symptoms, the surgeons "felt down lower and found a group of gut, intestines, which had entered in the hernial ring, but saw no external evidence of it at all." The attending surgeons agreed that respondent would probably not get relief unless they repaired the hernia, so they extended the incision, repaired the ring, closed it up, and respondent made an uneventful recovery. Respondent never had any trouble with his right side before the date of this injury; and this injury came on suddenly while he was lifting the stove. The further medical testimony was that the protusion, which is the hernia, was of recent date.

There was testimony from which the Industrial Commission could easily conclude that respondent's hernia appeared suddenly; and the Circuit Judge very properly refused to hold otherwise. The last two paragraphs from opinion in the *Rudd case,* quoted hereinabove, are especially applicable to the facts of this case.

Did the hernia or rupture result from injury by accident? Did the hernia or rupture immediately follow an accident?

When respondent's injury occurred he was lifting a heater off the pile or stack of heaters just like he had lifted the others—in the usual manner. He did not strike himself in any way, He did not slip, his foot did not slip and he did not stumble nor fall. There was no untoward happening. He was not conscious of any strain. However, from the circumstances related, it is a reasonable inference that there was a strain.

Therefore, the question before the Court is: What is meant by the word "accident" as used in the sections of the Workmen's Compensation Act dealing with hernias.

Appellants frankly concede that there is a conflict in the authorities, and that such conflict is irreconcilable. One line of cases holds that it is not necessary that there be some fortuitous or unusual and unlooked for mishap to establish an accident, if there has been an unexpected injury occurring while the employee is performing his usual duties in his customary manner. The other line holds that there must be some fortuitous or unusual and unlooked for mishap resulting in injury in order for it to be an accident.

It is true that "the Legislature has made hernia. the subject of special provisions and exceptions under the Workmen's Compensation Act" as stated in the opinion in *Rudd v. Fairforest Finishing Co. et al., supra,* but from a careful reading of the Act, and applying "a liberal construction in furtherance of the beneficent purpose for which it was enacted, and if possible, so as to avoid incongruous or harsh results," it cannot be held that a distinction exists as between a hernia injury and any other injury suffered by reason of an accident. It does not appear that it was the intention of the Legislature to attach any greater significance to the word "accident" as used in Subsection (r) of Section 2 of the Act, than in Subsection (f). Next to the last paragraph from the portion of the Rudd opinion quoted hereinabove clearly encompasses the legislative purpose in restricting compensation for hernia injury.

It is argued to this Court that our Workmen's Compensation Act is almost identical with, and copied from, the North Carolina Workmen's Compensation Act; and that under the case of *Fulghum v. Bleakley,* 177 S. C., 286, 181 S. E., 30, the rule of construction which had been announced by the North Carolina Supreme Court in *Leggett v. Cramerton Mills, Inc.,* 206 N. C., 708, 175 S. E., 95, and *Slade v.*

*Willis Hosiery Mills,* 209 N. C., 823, 184 S. E., 844, must be regarded as having been written into the South Carolina Act by the adoption of the North Carolina Act and knowledge of the construction placed upon the North Carolina Act by the North Carolina Court; and further that such construction is binding.

If it be conceded that the South Carolina Workmen's Compensation Act is practically identical with the North Carolina Act, we cannot presume that it was copied from the North Carolina Act. If it be further conceded that it was copied from the North Carolina Act, then following the *Fulghum case,* and in practically its verbiage, the effect of this pertinent fact would be to raise the presumption, there being no exprses provision to the contrary, that the Legislature intended the construction and interpretation of the North Carolina Court to form a part of the Act as adopted by it.

The South Carolina Workmen's Compensation Act was passed at the 1935 session of the General Assembly, and was approved July 17, 1935. 39 St. at Large, p. 1231. The effective date of the Act in the main was September 1, 1935. By an Act approved May 21, 1937, 40 St. at Large, p. 613, to become effective July 1, 1937, the Workmen's Compensation Act was amended, but the amendment in no wise dealt with the subsections of the original Act, now under discussion.

The *Leggett case* was decided June 20, 1934. The opinion states (206 N. C., 708, 175 S. E., 96) : "There was evidence tending to show that the claimant had suffered an injury by accident in the course of his employment. There was evidence to the contrary. The Industrial Commission is a tribunal established by law to find the facts in the first instance. In the exercise of the power so delegated by statute it has found upon conflicting and competent evidence that the claimant was not injured by accident in the course of his employment. Consequently, upon this record, such find-

ing is determinative. * *. *." It will therefore be seen that the Court merely held, as has our Court in compensation cases, that the findings of fact by the Commission on a claim under the Workmen's Compensation Act, were conclusive, and not subject to review by the Court.

While the *Slade case* was decided April 8, 1936, approximately one year prior to the amendment of the South Carolina Workmen's Compensation Act, yet as has hereinbefore been pointed out, the amendment did not relate to the subsections under discussion, and therefore the presumption does not arise that the South Carolina Legislature was adopting the construction and interpretation of the North Carolina Act as construed and interpreted in the *Slade case.*

Even so, we have such respect for the North Carolina Court and its Chief Justice, the author of the Slade opinion, that we consider the holding therein as highly persuasive and entitled to great weight, but find that we are circumscribed by the rule as stated by our own Court in *Goethe v. New York Life Ins. Co.,* 183 S. C., 199, 217, 190 S. E., 451, 458, as follows: "The rule clearly deducible from the overwhelming weight of authority is that, when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means. This is nowhere better stated than by Sanborn, J., in *Western Commercial Travelers' Asso. v. Smith,* 85 F., 401, 405, 29 C. C. A., 223, 56 U. S. App., 393, 40 L. R. A., 653, where he says: 'An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and * * * cannot be charged with the design of producing, * * * is produced by accidental means.' "

The words "by accident," and "an accident," as used in the Act, and the words "accidental means," as used in insurance policies are, it seems to us, synonymous.

One of the purposes of the Workmen's Compensation Act is to protect and partially compensate employees who are injured while engaged in the regular course of their employment irrespective of mishap independent of the injury itself, and/or negligence on the part of either the employee or employer.

If we have misapprehended the legislative intent, then this can be remedied by an amendment to the Compensation Act clarifying such intent; and should an amendment be sought, the writer hopes that the Legislature will have access to the learned and informative argument on behalf of appellants, filed in this case.

It is the judgment of this Court that the order appealed from should be and it is affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Fishburne and Mr. Acting Associate Justice E. C. Dennis concur.

Mr. Justice Carter did not participate on account of illness.