In this matter, plaintiff was shot two times at her workplace by a man who had previously assaulted her at her workplace the very same day. The majority found that this assault was personal in nature, and had an insufficient connection with plaintiffs employment to be held compensable. While I acknowledge that the majoritys decision follows the current law of this state, I nonetheless cannot in good conscience join in this decision, and respectfully dissent from the majoritys Opinion and Award.
In North Carolina, an assault by a third person occurring at an employees workplace must have a sufficient connection to the employment in order to find that it "arose out of the employment. G.S. 97-2(6). If such an assault is purely personal in nature, it is not compensable. See Ashely v. F-W Chevrolet Co., 222 N.C. 24, 21 S.E.2d 834 (1942). In this case, had plaintiff been shot the first time the assailant came into the store, I would concur in an opinion finding that this was not compensable. However, those are not the facts of this case.
On June 21, 1996, plaintiff was working on the premises of her employer in its convenience store when was she was attacked by Mr. Vernon Farmer, her ex-boyfriend. Mr. Farmer entered the store and threw a beer at plaintiff, striking her in the chest. After this initial assault, plaintiff was distraught and feared that Mr. Farmer would return and possibly kill her. Plaintiff relayed her concerns to Mr. Ronnie Braziel, the supervisor on duty, or the person she reasonable perceived to be her supervisor, and repeatedly asked him to call the police. Mr. Braziel ordered plaintiff to put away the beer, to continue working and refused to call the police. Plaintiff, understandably upset about the attack, was also concerned about losing her job so she complied with Mr. Braziels instructions.
Soon thereafter, Mr. Farmer called the store, spoke to plaintiff and threatened her life. Again, plaintiff relayed this information to Mr. Braziel, but he continued to refuse to call the police and plaintiff continued to be under the reasonable impression that she had to continue working. Within twenty minutes after the initial attack, Mr. Farmer returned to the store, this time with a handgun. Mr. Farmer pointed the gun at plaintiff and pulled the trigger. Plaintiff had caught a glimpse of Mr. Farmer just prior to the first shot, so she was able to duck and raise her right hand in a defensive posture. This first shot blew away a section of her raised hand. Mr. Farmer then reached over the counter and shot her two more times. Fortunately, plaintiff survived this assault, but did undergo multiple surgical procedures and experienced severe psychological difficulties.
It is my belief that the facts and circumstances of his case cry out for a reexamination of the "positional risk doctrine in North Carolina for the Court of Appeals to revisit its holding in Hemric v. Manufacturing Co., 54 N.C. App. 314, 283 S.E.2d 436 (1981); disc. review denied, 304 N.C. 726, 288 S.E.2d 806 (1982). Under the "positional risk theory, other jurisdictions have found personally motivated attacks compensable when the employment contributed in some manner to the assault. See 1 Larson, Larsons Workers Compensation Law 8.02 (3) (1999); Brown v. Knight-Ridder, Inc., 1 F. Supp.2d 622 (S.D.Miss. 1998); Murphy v. Workers Comp. App. Bd., 86 Cal.App.3d 996, 150 Cal.Rptr. 561 (1978). This doctrine is raised in this case because of the actions of Mr. Braziel that increased the already known risk of harm facing plaintiff.
Although here, as in Hemric, the employer had knowledge of threats and a prior assault had occurred on the employers premises, the employers actions in this case went beyond those of the employer in Hemric. In this matter, by refusing to call the police and preventing, as a superior, plaintiff from calling the police, Mr. Braziel actions directly increased the risk facing plaintiff. In doing so, Mr. Braziels actions created a sufficient connection to plaintiffs job such that the assault should be found to have arisen out of her employment and to have been compensable.
Furthermore, the concerns expressed by the Court in reaching its decision in Hemric are not applicable, in my opinion, to plaintiffs claim. In reaching its holding in Hemric, the Court of Appeals noted that to find such an assault to be compensable would place the employer in the position of yielding to such threats while potentially also causing the unfair termination of the employees job. See Hemric v. Manufacturing Co., 54 N.C. App. 314, 283 S.E.2d 436 (1981); disc. review denied,304 N.C. 726, 288 S.E.2d 806 (1982). Here, the burden placed on the employer, telephoning the police, was minimal and in no way did the termination of plaintiffs job have to be part of the reasonable reaction to this threat.
For the foregoing reasons, I contend that the current state of the law in North Carolina should be reexamined such that plaintiffs assault could be found to be compensable, and I respectfully dissent from the majoritys decision.
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER